May it please the Court. My name is Alan Ritchie, and I represent the appellant's defendants in this case, the Townleys. Your Honor, I'd like to reserve eight minutes for rebuttal. Your Honors, this case is here today on de novo review as the District Court erroneously granted summary judgment for the United States and denied summary judgment for the Townleys inasmuch as genuine issues of material fact do exist, and the United States was not entitled to summary judgment as a matter of law. Briefly, the Townleys, in the context of their employment with Alpine Boys Ranch, were advised that should a lawsuit come because of boys being there, that they would not be covered by the insurance policy there. So they needed to find some way to protect their assets. They sought advice of counsel, and in 1993, they set up Living Trusts, and within the Living Trusts placed some of their assets, including the two properties that are at issue in this case. Later on, they found out that Living Trusts are merely alter egos and would not adequately protect those specific assets. So in 1995, Beaver Valley Trust was established. Now, the Townleys were only grantors in placing some property in there. They were not the trustor. They were never the trustee, and they were never beneficiaries, although their children are four of the five beneficiaries. Did the Townleys file a gift tax return or pay any gift tax in connection with that transfer? No, Your Honor. They did not receive the gift. But they gave one? They gave one. I realize this isn't a gift-tax action, but do you know, is there anything in the record that suggests there was any consideration of whether they were obligated to file a gift tax return or respond to the law on that? The only thing that's in the record, Your Honor, is that the consideration that was given was love and affection. Well, that's, I mean, I could give somebody a million dollars and say I got love and affection back. That doesn't mean I don't have a gift-tax obligation. I mean, I have to say, the whole picture I have here is people who think they're not subject to the tax laws. Okay. And that's not a very persuasive picture. Well, Your Honor, this is not a tax protester case. Have they paid taxes since 1994? They did. In 1994, their taxes were paid. They were employees, and those taxes were reserved. Since then? I mean, they didn't during the years in question here, and that's not before us. That's just kind of a given is what we have, but I don't know if any of the years subsequent they've ever responded to the tax laws either. In 1995, Your Honor, there was a tax liability of under $10,000, and in 1995 was when the properties were transferred into the trust. Just to focus our analysis, what do you think is the most significant error in your view made in the district court? Well, Your Honor, actually, there's three significant errors. The first of all deals with the Fraudulent Transfer Act. In Washington, it's required that to prove fraudulent transfer, to prove fraud, the party asserting fraud has to prove that by clear and substantial proofs. And you started by telling us that the purpose of setting up this trust was to insulate assets from execution by somebody that has a legal claim against your client. I mean, it doesn't seem to me there's a whole lot more that needs to be proven past that admission, is there? Your Honor, there were only some assets placed in the trust. And those are the assets that we're fighting about here. But the IRS's own documentation shows that the counties had over $150,000 still in other accounts, and the tax liability at that point of transfer was less than $10,000. Well, here's what they said. They said that Townsley separated themselves from their assets in the event that the ranch where they worked along with its directors and employees were ever sued. That's their basic plan, correct? Their plan was to set aside some assets, correct. And given the scope of claims, the Washington Fraudulent Transfer Act, like most of these uniform acts, is not limited just to fraud. It also includes hinder or delay. Why wouldn't that, on its face, be an effort to hinder creditors? Because they still had other assets available. What we're talking about is the Fraudulent Transfer Act and the ability to go back and say, okay, there was this transfer somewhere in time, and now we're going to undo that transfer. Well, but you keep talking about the fraud. That's what they call it, the Fraudulent Transfer Act. And all I'm suggesting to you is that the Fraudulent Transfer Act has three parts. You know, it's objective circumstances where you intend to defraud, hinder, or delay. You don't actually need actual fraud under the Washington Law. But you have to have actual intent. And under Washington Law, that was exactly their intent. I mean, I understand. In most cases, you're fighting over whether the transfer had some valid other reason. And one of the indicia you look to is whether there were other assets still available. But you have come in and told us the whole purpose for this transfer is to get it out of the way of attachment by creditors. I don't think there's a lot more that needs to be shown after that. Your Honor, what the statute requires is that the creditor must exist at that time. And what they were talking about is sometime in the future, they may face a lawsuit. That's no different than someone taking out fire insurance on their home. And then if a fire occurs, they're coming back and saying, well, that was fraud because you must have reasonably known that at some time you would have a fire in your home. Or a truck driver who sees the accidents every day of the road, every day on the road, and knows that he has a potential that someday he may be in an accident, may be sued. He has liability insurance. What is preventing him from taking other assets and placing them in a trust for the benefit of his children? Is that fraud? The policy issue here is that you have to still maintain sufficient so that you're not or so that you remain solvent. And clearly, the record shows that the Townley's were solvent. The second issue that we deal with deals with alter ego nominee. And under that theory, they must prove under state law that the other entity was a nominee or alter ego. The court in this case did not apply Washington law. The government has conceded that Washington law is unsettled on the issue of alter ego nominee. And the Supreme Court and the Washington courts have said that in that particular situation, the district court, the Federal courts cannot determine what Washington law is. They must certify the question to the Washington courts. Can you give me any authority that says must? We deal with issues of state law all the time. Yes. In Percine Vessel v. Moose, Washington Supreme Court said that the rule that the Federal district courts are bound to abstain from deciding an issue regarding an unsettled question of state law until the state courts are given an opportunity to cite the question. They were citing the U.S. Supreme Court in Reitz v. Bosenich, where the Supreme Court said the proper exercise of Federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to the Federal courts' consideration of the underlying Federal constitutional questions. That is especially desirable where the questions of state law are enmeshed with Federal questions. So here we have a situation where the court acknowledged, and the U.S. acknowledged, that Washington law is unsettled for alter ego nominee. So the proper procedure at that point is then to certify the question to the Washington Supreme Court. Instead, what the United States has said is that the district court then looked to other Federal cases. Well, they looked to Georgia. They looked to Pennsylvania. They looked to California. None of those are Washington law. So the court ruled on the alter ego nominee issue without applying Washington law because they didn't know what law to apply. The third issue is that in 2001, Cal only filed a bankruptcy act petition. In the course of that litigation, the IRS was involved, as they proved, filed a proof of claim. One of the other creditors in there brought an action to lift the state. And at the core of that issue was that one of the properties involved here, that they had a secured claim against it. The bankruptcy court looked at that and specifically found that in regard to the estate of the debtor, they had no interest in that property. The IRS was a party. They were following that. They knew what the bankruptcy court decided. And as this court decided in Snyder, it is the estate of the bankruptcy that determines whether a person, whether an individual, has an interest or not. And the bankruptcy decided that conclusively, that the townies have no interest in the property. So the IRS alleged that they had a secured claim. Under Snyder, they could only have a secured claim if the property was part of the estate of the bankruptcy. So based on the bankruptcy court's decision, the IRS did not have a secured claim in the property because the property was not part of the estate of the debtor. They did have a... Why do your clients care? They did have a... What basis do they have to object here if it's not theirs? Why should it be a problem to them if it's foreclosed upon because it's not theirs? Well, that's the issue of standing that they raised. And in all the cases they cited, the issue of standing only goes to plaintiffs bringing the case. But I'm asking as a substantive matter. If your clients insist so strongly this isn't theirs, then why are they paying you to make sure that this house doesn't get foreclosed upon? The other thing that's... Well, there's a number of issues that they're paying me for. That's only one of the issues. But if they don't care about this house and it's a foreclosure... It's not their house, right? It's not their house. So then that's really all of your... Do you represent them? I do represent them. Do you represent the owner of the house? No. But their children are beneficiaries of it. And if they lack standing to challenge that, then there's no better party than them to be here. Because the owner... The children themselves could be here. Excuse me. The children could be resisting the foreclosure if they say, or the trust. I guess technically the trust is, you tell us the owner. Why isn't the trust trying to protect the house? That's a very good question, Your Honor, because as the Court found, the only, the United States did not name the trust as a party. Who they named was Bruce Alden Bannister as trustee. When Mr. Bannister tried to appear and defend himself, the Court said, well, under C.E. Pope, the trustee doesn't have any authority, so you can't represent yourself, so you can't be party to this. But he had been named as a party, as a trustee. And the trustee could have hired a lawyer who could have appeared on behalf of the trustee to defend. The Court said that the trustee had no interest. So he couldn't. He had no ability. And so a default was entered against him, even though he tried to. Then later the Court looked at it and said, well, really, the real party in interest here is Beaver Valley Trust. I don't know why the United States didn't name them as a party. They didn't in this case. Your Honor, I'd like to reserve the remaining time for rebuttal. Thank you, counsel. Good morning. May it please the Court. I'm Frank Seiler here representing the United States. Let me start, if I may, with talking here about standing and this issue of the trust being a defendant or not. The way you bring a trust into a case, of course, is by serving and naming the trustee, in this case Mr. Bannister, and you sue him in his capacity as trustee of the trust. So the trust was brought in by naming Mr. Bannister in his fiduciary capacity as trustee. When he appeared, the Court advised him that he couldn't appear pro se because this was not a suit against him personally and advised him that they needed to get an attorney to represent the trust. That was never done. Which court was this? The district court here. In this same action? Yes. So what happened then? You sued the trust in district court? Yes. When we filed our complaint, we named everybody. The individual came in and the Court said you can't represent yourself, you need a lawyer. You can't represent the trust, you need a lawyer. And then no lawyer ever appeared? No lawyer ever appeared. Was there then a judgment entered against the trust? There was a default judgment entered against Mr. Bannister's trustee for the trust. That's the default judgment against the trust. Yes. Now, the trust did not appeal. The only appeal was taken by the Tomleys. Well, the Tomleys agree that the trust is the owner of the property, right? Well, that's their position. Then why aren't you satisfied in your claim then? I'm sorry. If the trust, if there's a default against the trust, the Tomleys say they don't own that property, correct? Yes. Well, that's their position. So why can't there be satisfaction out of the trust? Well, we think there can be, but the Tomleys are here contesting that. I thought they said they didn't contest the fact that that property belongs to the trust and not to them. That's what I understood. Well, they're contesting. Sorry, I've misspoken. It is our position for purposes of merits that this is their property, that the district judge was correct to disregard the transfer on a number of grounds. It was a fraudulent transfer, alter ego, whatever. And to permit us and to reduce that judgment, allow us to foreclose against the property of the trust. What we're saying is for purposes of standing. Wait, wait. Can we just stop there? Surely.  Sorry, Your Honor. If you can foreclose against the property of the trust, you sued them, they didn't show up, you now have a judgment against the trust, correct? Yes. Is it a final judgment? It's the same as the judgment that's here on appeal. Right. Okay. That judgment's on appeal? Who appealed it? Well, that's the standing issue. The Tomleys appealed it, the trust didn't. No, no, okay. So the trust, is there anything, is the judgment as to the trust final? Since it's a single judgment and the judgment's been brought up here. But it's not, I mean, it's a judgment against a different party. Well, the court stayed its judgment pending this appeal. So I would have to say it's not. That might have been easier to figure that out if we'd known that first. I'm sorry, Your Honor. Okay. So if you, let's just say you lose this appeal, and you still execute against the trust? I guess we could. Well, your problem, I guess it's all wrapped up in the same order. The order that's on appeal. It's all one order, that's true. The order that has the foreclosure order. And since the district court has declined to, has stayed that order pending this appeal, it's kind of left to see what we would say before you can figure out what pieces are left to pick up. What might be left intact from that order. That's correct, Your Honor. Let me ask a different question on the Uniform Departmental Transfer Act. If it's intended, of course, to protect not only the existing creditors, but future creditors down the road. But do you have to have at least a creditor in existence at the time you make the transfer? I don't believe so. I haven't researched that point, but I don't believe so. I don't think that would. I mean, here's what it says. It says you have to have actual intent to hinder, delay, or defraud any creditor of the debtor. Well, if you don't have, you know, let's say I'm sitting here debt-free today, and I decide I'm going to put my property in a trust. Even if I'm doing that because someday somebody might sue me, I haven't defrauded any actual creditor today, have I? I would say not, but I'm not sure that a total absence of a current creditor at the present time would necessarily negate the application of the act in all cases. I'm always reluctant to say never. So I'm asking here, the IRS is certainly a future creditor, but if the initial transfer was made and there were no creditors at that time, and I don't know, we'd have to look at the record, would the act apply? I think in this circumstance it would on the facts here, because it depends on what you mean. I mean, the fact of the matter is at the time of the transfer, they owe taxes. They owe taxes for 94, now 95, 96. So there is a credit. Well, so the difference is. Well, certainly a creditor in the wings. There would be a creditor on the table. I would say so. I mean, not in the formal sense that we had assessments that we could sue on to reduce the judgment, but certainly there would be a reasonable expectation that the service would be there looking for its taxes. I mean, after all, if you look at page 10 of our brief, the, you know, we know that taxpayers sent a 17-page letter to the IRS requesting a determination of status for tax purposes prior to filing of tax returns. They asserted they were exempt from tax because the income is an excise tax requiring the extra size of a privilege. The right to labor is an inalienable fundamental right upon which a privilege tax cannot be imposed. The IRS did not respond to the letters, and Bryce concluded they were not required to file tax returns as long as the IRS did not respond. Charlene allowed Bryce to handle her tax matters and generally agreed with his views. They also filed commercial affidavits with the auditor of Chelan County, stating they are nonresident aliens, not subject to the jurisdiction of the Internal Revenue Laws, not required to file Form 1040, not required to pay income tax. Now, I think any reasonable person at that time would expect that the IRS would differ with their views and would expect them to pay tax for the years. So I think if you're talking about what the situation in 1995 in this case. Nineteen when? Well, the time of the transfer is 1995. No, I thought the residents went in in 1993. That was into the living trust, as I recall. There were two trusts there. First, there was a living trust in 1993 and then Beaver Valley in 1995. I have that down as October 1995. I believe that's correct, Your Honor. By that time, the taxes for 1994 would have been due in Owing. There should have been a due in Owing for 1994. 1995 was there. You know, given their position, it should have been no surprise that, you know, the IRS would be. So the government's position is that by the time that the trust was created and the house put into the Beaver Valley Trust, the government itself was an existing creditor. Identifiable as a creditor. Or a future creditor, perhaps. I'm hesitant because in terms of the formalities of the tax law and our ability to assess, et cetera, et cetera, it technically would not be a creditor in that sense. We could have come. The bill was in the mail. I'll go along with that characterization, Your Honor. You're a tax expert. Doesn't the obligation arise by operation of the law with respect to tax? It's to pay the taxes, yes. We have a system of self-assessment. But what usually arises with the filing of the return and you assess a certain, you self-assess. When you file a return saying, you know, X number of dollars in tax, excuse me, that's regarded as a self-assessment, you're saying that you owe that much and. . . Well, even if you don't file a return, you owe it a certain point whether you file a return or not, don't you? Well, if you don't file. . . Well, that's true, but then you get the question of the service doing a substitute for a return and that type of thing. But the answer is yes. We have an obligation to pay taxes. I earn X amount of money during the year. When do I have an obligation for taxes? When do I have an obligation? Usually for individuals, it's April 15th of every year. At least by then. Yes. So if you don't. . . Judge Reiner doesn't file his taxes, doesn't mean. . . And you haven't filed a substitute 1040. We'll come after him so fast, Your Honor. I don't know where to find him. And he'll owe the taxes, correct? Absolutely. Yes. Yes. I mean, there would be formal. . . I'm sorry to learn that, but that's what I had thought, that I would have an obligation. I'm not suggesting a bounty where I'm turning him in or anything. But my question was, isn't it an obligation by operation of law? You don't need a piece of paper as an assessment to owe the. . . to have the obligation. That's correct. I mean, in. . . Let me just say yes. I need to go to the jumping off point. I know it's hard to say yes apparently. As a tax lawyer. As a tax lawyer, for the purposes of the Washington State statute, which is really what was the source of the question, identifying whether a future theoretical creditor or a creditor sufficiently existent so you can identify an interest that the law is intended to protect, whatever the tax law says, by the time of the transfer in October of 1995, the government's position is it had a creditor's interest sufficient such that it was protected by the Washington State statute. Absolutely. Absolutely. One way or another. I was responding to Judge McEwen's hypothetical about what if there's absolutely no creditor in existence, would we make a transfer? And I'd like to be in that happy situation myself, but I haven't quite attained that. By and large, we've covered I think most of the points on our brief. I don't want to reiterate every point we made there. The principal arguments made by the Talley's on appeal, of course, run to the collateral estoppel res judicata, intentions they make. And it's obvious that when you look at the bankruptcy court proceedings, there was absolutely no determination by the bankruptcy court regarding these transfers. The, I suppose, high watermark of the bankruptcy court determination was apparently in response to the motion to lift the stay by Washington Mutual with regard to their, I assume, mortgage on the house, when the bankruptcy court determined that the house wasn't in the bankruptcy estate and Washington Mutual was free to pursue its remedies under state law. Presumably the house was not listed on the schedules because the Talley's had taken a position it wasn't their property. But that's a far cry from a determination that there had been no fraudulent transfer. So there's really no basis for either collateral estoppel or res judicata to apply here. I think with that, Your Honor, unless the court has, I'll be happy to take any questions the court may have. I think we've otherwise. All right. Thank you, counsel. Thank you. Your Honors, there's two things that were brought up. First of all, the United States has now changed its position because before the district court, the United States took the position that it was not a creditor at the time of the transfer of the properties because no tax was doing, due on the property. The taxes for 94 had been paid. The taxes for 95, as we heard, as a matter of law, would not be due until April of 96. So at the time of the transfer of the properties, the IRS, the United States, were not creditors. That's what the district court found. That's what the IRS admitted below. Now they've changed their position here and now, not in their briefing. Second thing, they've stated that their position is that the county's. They had paid in full their 1994 taxes? Yes, Your Honor. The first. Is that based on taking a $27,000 deduction for non-tax compensation? That was 1995. Well, I don't know. I'm looking at the tax return for 1994. All I know is that the IRS. Number 420 on the excerpts of records. In this action, the IRS has only alleged that there were taxes due and owing for 1995 and 1996. And the primary point for the taxes in 1996 were that the Townley's had, as the IRS admitted, over $150,000 in other accounts. What they did was they took some of that out of Piper Jaffray and put it in the Chase account. The IRS taxed it being in Piper Jaffray and then again taxed it being in Chase. So what we're looking at is a double tax. So even the amount that's due and owing is incorrect in this case. And that also is a genuine issue of material fact. Can I just step back? Maybe I'm missing something here, but I'm looking at the district court's order. For the tax year, 1994, there was tax due. This is like pages 5 and 6 of the record? 5 and 6 of the record. It was the district court's order. It says there may not have been an assessment at that point, but there were taxes due and penalties due, correct? It's not accurate to say they had paid in full their 1994 taxes by 1995. You know, I can't address that. That is what it shows here. But the district court did find and the IRS admitted that they were not creditors at the time of the transfers. Where does it say that? Just to help you out on page 16 of the record. Page 16, which is page 14 of the order. There is a sentence slightly more than halfway down the page. At the time defendants transferred the property to the Beaver Valley Trust, Plaintiff was not a creditor of defendants. Now, I took that to mean what Mr. Shear was talking about in terms of how assessment works and at what time the government has a legal claim it can act on. And so I didn't find that inconsistent. I read the order to understand that there are taxes due and owing from 94 and that the parties had a reasonable expectation or should have had a reasonable expectation that money was going to be owing to the government for obligations in 1994. And we had a couple different uncertainties going on here. First, having looked at the order, is it your understanding that, in fact, part of what's involved in the case are tax obligations for the calendar year 94, albeit obligations assessed later? Because that's what the order seems to show, and that was my understanding. That's what this order shows. Yes, Your Honor. And so because we're dealing with an issue of who's a creditor or who is it that the Washington State statute is intended to be protected, my understanding, I want you to respond to it to the extent that yours is different, my understanding is that the Washington statute identifies as the parties to be protected. My reading would include future creditors, but at least people who at the time could be perceived as being owed money by, in this case, your clients. And if it's true that 1994 tax obligations are part of this case, resulting in the as reflected in the order, wouldn't it be the case at the time of the transfer of the house in October of 95, the government was one of those potential creditors because money was owed to the government at that time, or was going to be owed to the government for the 94 obligations? The statute requires three things. First of all, there must be a creditor at the time of the transfer. Second of all, there must be actual intent to defraud that creditor. If there's no actual intent, which Mr. Townley stated he had no intent to defraud the IRS, no intent to alter or hinder, it didn't have to do with them. It had to do with a potential lawsuit with the Boys Ranch. Then it comes down to an assessment of the credibility, which the Court could not determine on summary judgment. There must be a hearing to determine that credibility. The second thing you said at some point, and I think you make a good point, but I thought somewhere in the record I read, and he also made the statement that he basically was trying to do this not just because of judgments from the ranch, but because of any creditor. If I can, I'm out of time, Your Honor. Can I answer that? Please. Okay. His reference was always to the Boys Ranch. That was the only thing that he was looking at, was through the employment that he had that he may be sued. That's the only specific reference that he made. He never said it was for any potential creditor that may come against him. Well, this record said additionally Mr. Townley stated that it was his goal to protect his assets from anyone who might get a judgment against him. And he cites pages 18 to 20 of something, court record, I guess, 58, Exhibit 1, at 18 to 20. That's at least the district court's finding as to what he stated. And what I would say to that is that that is an improper characterization and an assessment of what Mr. Townley actually said, because what Mr. Townley actually said was that it was only pursuant to the employment. Any action that may come based on his employment with the Boys Ranch. All right. Well, thank you very much. Thank you, Your Honor. The case just argued will be submitted.
judges: Reinhardt, McKeown, Clifton